THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE HENRIQUES & Co., INC., et al., Appellants, Impleaded with Others.

(Argued April 24, 1935; decided May 21, 1935.)

*Irving D. Lipkowitz* for appellants.

*John J. Bennett, Jr., Attorney-General (Margery Ceder-strom* and *Ambrose V. McCall* of counsel), for respondent.

LEHMAN, J. The corporate defendant, George Henriques & Co., Inc., has been engaged in the business of selling securities to the public. The defendant George Henriques manages and controls the corporation. In April, 1933, an order was granted upon the application of the Attorney-General, pursuant to the provisions of section 354 of the General Business Law (Cons. Laws, ch. 20), directing the defendants to appear and be examined concerning alleged fraudulent practices in their business and to produce papers, documents, books and records concerning the same. At that time no action had been commenced but, in accordance with the statute, the application showed that the Attorney-General was about to begin an action pursuant to article 23-A of the General Business Law. The defendant appeared for examination, but failed to produce any books or records covering the period from March 1st, 1932, to October 1st, 1932, when, it was claimed, some of the alleged fraudulent practices took place. After the defendants' failure in this respect to comply with the order of the Supreme Court, the Attorney-General, on May 23d, served upon the defendants a summons and complaint in an action brought in conformity with section 353 of the General Business Law. The complaint in that action alleged specifically and in detail fraudulent practices from March 1st, 1932, to the date of the complaint. The defendants filed an answer denying these allegations. Motion was then made to punish the defendants for failure to produce

their books and records covering the period from March 1st, 1932, to October 1st, 1932. By amendment to the complaint the allegations of fraudulent practices by the defendants were confined to the same period. The motion to punish for contempt was granted, and by order of the court the answer of the defendants was stricken out. Without presentation of any testimony to sustain the allegations of the amended complaint, findings of fact were made in favor of the plaintiff, and judgment was granted enjoining the defendants from selling or offering for sale to the public any securities issued or to be issued, and appointing a receiver to take possession of the property and assets of the defendants " derived by means of fraudulent acts, practices or transactions in the sale of securities, pursuant to the provisions of Article 23-A of the General Business Law," and to liquidate the business of the defendants. From that judgment the defendants have appealed.

The courts can never grant judgment depriving a defendant of his liberty or property unless there has been opportunity to defend the action. Without opportunity to meet a charge, there is no due process of law. (*Hovey* v. *Elliott*, 167 U. S. 409.) No court can grant such a judgment without a hearing, and a refusal to hear is a denial of due process. Though, by statute, the court may have been granted authority to strike out the answer of a defendant as punishment for a contempt in failing to obey an order for examination or for the production of evidence, yet the court is powerless, because of such contempt, to deny the defendant a hearing upon the charge made against him, except where, from the suppression of evidence by the defendant, an inference or presumption arises that the charge made is in fact true. Disobedience of an order to produce evidence calculated to sustain a charge may, nevertheless, at times take the place of an admission of guilt. Suppression of evidence which if produced would prove the truth or falsity of

the charge may, in proper circumstances, dictate an inference of guilt. An order of the court for the production of such evidence may not be flouted. Contumacious disobedience may be punished as a contempt, but such punishment cannot take the form of deprivation of the constitutional right to a trial and hearing before condemnation upon unproven charges. The State has no power to deprive any person of such right; it has power, none the less, to advance justice by reasonable regulation of the form and manner of the exercise of that right. A party who suppresses evidence by which the truth of a charge can be established may render a hearing futile. Where such suppression dictates the inference that the charge is true, a court may treat disobedience of its order for the production of such evidence as a confession of the charge. The recalcitrant party has, then, had opportunity to meet the charges at a fair hearing. He rejects that opportunity when he willfully disobeys the order of the court for the production of evidence. He cannot be heard to claim the right to a hearing after he has refused to co-operate in the hearing by submission to the court of evidence which the court requires for just decision. The limitation upon the power of the court to strike out an answer and to grant judgment *pro confesso* as punishment for disobedience of its mandate to produce evidence is inherent in the nature of the judicial function. It may exercise that power only in aid of its function to determine the truth of the charges made, after due consideration and after opportunity for a hearing accorded to all parties. (*Feingold* v. *Walworth Bros., Inc.*, 238 N. Y. 446.) The test in each case is whether refusal to produce evidence sustains the findings of the court.

Before considering whether in the present case the trial judge had power to strike out the defendants' answer as punishment for a contempt, we must determine whether there is evidence to sustain the finding that in fact there has been a willful disobedience of the court's order for

the production of the defendants' books and records. It is clear that there can be no willful disobedience unless at the time the order was made the books and records were in the possession or control of the defendants. The order for the production of the books and records was granted *ex parte*. At that time there was no opportunity for the defendants to urge that the books were lost and destroyed. The question is not before us whether an order, *made upon notice*, for the production of books and papers constitutes an adjudication that the books and papers are in the possession or control of the party ordered to produce them, or at least places upon such party the burden of proof of showing that they are not within his possession or control. (Cf. *Oriel* v. *Russell*, 278 U. S. 358.) The defendants are entitled to a hearing in regard to that at some stage of the proceedings, and the burden of proof rests upon the plaintiff when it seeks to punish the defendants for a willful violation of an *ex parte* order.

Here it is undisputed that the defendants kept records and books of their proceedings from the time they began business in March, 1932. Business men who have nothing to conceal ordinarily safeguard carefully the records and books of their business transactions, at least for a reasonable time. Only under extraordinary circumstances does a business man lose or part with control of his business records. Thus unless a credible explanation is given for failure to produce, the inference is almost irresistible that a failure to produce books and records is willful. The burden of producing evidence which would constitute explanation or excuse then shifts to the parties who alone have knowledge of the actual facts. So the referee ruled in this case, and the defendants attempted to produce such evidence.

The referee rejected the attempted explanation and found that in December, 1932, when, it appears, the Attorney-General asked to see these books, they were

still in existence and in the control of the defendants. Without analysing in detail the testimony of the defendants, we state our conclusion that the finding of the referee was fully justified. What happened to the books between December and April does not appear; and the referee refused to rule that there is a presumption that the existence of the books within the control of the defendants continued until the date of the order of examination. Perhaps when the defendants learned in December that an investigation was being made as to their business practices, they not only suppressed but actually destroyed books and records which might tend to show wrongful practices. At that time no charges against them had been formulated. None had been formulated against them at the time when the order for the production of their books was made in the following April.

Even though we should assume that upon the date set for the production of the defendants' books and records they were still within the possession or control of the defendants, the question would still remain whether the disobedience of the order justifies the inference that these defendants are guilty of the charges subsequently formulated.

The destruction by the defendants of their books and records or the failure of the defendants to produce such books and records if in their possession or control would be evidence of a consciousness of guilt. If, at the time of such suppression or failure to produce, definite charges had been pending against the defendants, the truth of which could be proven or disproven by the books and records, the defendants' conduct might even lead to an inference of the truth of the particular charges. To sustain the judgment in this case we must, however, go a step further and find an inference not merely of general consciousness of guilt, but also of guilt of specific charges thereafter formulated. That gap cannot be easily

bridged. The justice presiding at Special Term has found every allegation of fraud set forth in the amended complaint. His decision includes nineteen separate findings of fact and twenty-four separate conclusions of law. Certainly guilt of some of the charges embodied in the decision can hardly be inferred from suppression of evidence before these charges were formulated. If disobedience of an order for the production of books and records before an action has been commenced justifies denial of a hearing upon charges subsequently formulated in the complaint, then a plaintiff can obtain judgment upon any charges he thereafter chooses to make. We find no statute of this State which confers such an extraordinary power upon the courts, and no case which would sustain the exercise of such power.

It is said that such power is conferred upon the court by section 405 of the Civil Practice Act. That section provides that the court may strike out a pleading of a party to an action in which he was subpœnaed as an additional punishment for failure to obey a subpœna or to obey an order made by the court or a judge " in an action * * * requiring him to attend and be examined, or so to attend and bring with him a book or paper." The scope of that section is limited to punishment for failure to obey subpœnas or orders in an action. Here, as we have said, no action was pending at the time when the order was served. It is said, however, that testimony which is material to an expected party in the prosecution or defense of an action may be taken pursuant to an order of a court or judge before the action is brought (Civ. Prac. Act, § 295), and that such an order is an order in the action thereafter brought. It may be true that an order of examination before an action is commenced is, for purposes of appeal, regarded as an intermediate order in the action subsequently brought. (Cf. *People ex rel. Morse* v. *Nussbaum*, 55 App. Div. 245.) It does not follow that such an order is an order in the action sub-

sequently brought, within the meaning of section 405 of the Civil Practice Act. The application of that section is plainly confined to disobedience of a subpœna or order in an action after a complaint has been served. In authorizing the court to strike out the pleading of a party, the Legislature, it seems plain, referred to a pleading which attempts to create an issue upon which evidence is willfully withheld. Any construction which would give a broader power to the court would result in denial of a hearing upon a controverted fact essential to judgment.

Moreover, the order for examination in this case was not made pursuant to provisions of the Civil Practice Act but pursuant to the General Business Law, section 354. That section provides that whenever the Attorney-General has determined to commence an action, he may present to a justice of the Supreme Court an application for an order directing the person or persons mentioned in the application to ·appear before the justice of the Supreme Court or referee designated in such order and answer such questions as may be put to them or to any of them; " or to produce such papers, documents and books concerning the alleged fraudulent practices to which the action which he has determined to bring relates. * * * The provisions of the civil practice act, relating to an application for an order for the examination of witnesses before the commencement of an action and the method of proceeding on such examination, shall not apply except as herein prescribed." Even though section 405 of the Civil Practice Act were otherwise applicable to orders of examination before the commencement of an action, orders of examination obtained under section 354 of the General Business Law would still be expressly excluded from its scope. For the result of refusal to produce a book or paper relevant to an inquiry under the General Business Law, we must look to the provisions of that statute. Where upon an application for a preliminary injunction it appears that the defendant named

in the action or an officer thereof has refused to produce a book or paper relevant to the inquiry when duly ordered so to do, by the officer or judge duly conducting an inquiry into the subject-matter forming the basis of the application for such preliminary injunction, " such refusal shall be *prima facie* proof that such defendant is or has been engaged in fraudulent practices as set forth in such application and a preliminary injunction may issue from the supreme court without any further showing by the attorney-general." (§ 353.) The question of whether a preliminary injunction might properly be issued upon the defendants' refusal to produce their books and records is not presented by this appeal. We do not pass upon it now. Now we decide only that for refusal to produce books and records upon an inquiry preliminary to the bringing of an action under article 23-A of the General Business Law and preliminary to an application for a temporary injunction, the court has no power, statutory or inherent, to strike out the answer of a defendant and to grant final judgment. Perhaps the consciousness of guilt evidenced by suppression of books and records might be sufficient *prima facie* proof of general, though undisclosed fraudulent practices, to justify the issuance of a preliminary injunction for the protection of the public pending a hearing of the charges thereafter formulated. Even so, such suppression would not justify a denial of a hearing upon the charges when formulated. The Legislature has here made a distinction based upon substantial grounds. The courts in the exercise of their judicial function have power to grant temporary injunctions in proper case without a hearing. Before final judgment, there must be a hearing and judgment may be granted in regard to controverted issues only after consideration of evidence produced. Though we assume for purposes of this appeal that the defendants have been guilty of a willful contempt of the order for their examination, and though we assume further that

such disobedience is evidence of a consciousness of guilt, punishment for such disobedience cannot include a denial of a hearing upon charges subsequently formulated against them. If the punishment had followed immediately upon the offense, argument could hardly be made that the court would as part of such punishment have power to direct a judgment against the defendants in an action which might be brought thereafter. In principle the same rule should apply when proceedings for the punishment of the contempt are delayed till after the action has been begun and issue has been joined. In both cases the test is whether the contempt constitutes confession of the wrong charged. In neither case can there be confession until the charge has been formulated.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH and LOUGH-RAN, JJ., concur; FINCH, J., not sitting.

Judgments reversed, etc.