**Mordecai AGUR, Plaintiff-Appellant,**

v.

**The Honorable Malcolm WILSON (as Successor in Office to the Honorable Nelson A. Rockefeller), Governor of the State of New York, et al., Defendants-Appellees.**

**No. 869, Docket 73-1529.**

United States Court of Appeals, Second Circuit.

Argued March 19, 1974.

Decided May 24, 1974.

Cyril C. Means, Jr., New York City, for plaintiff-appellant.

Burton Herman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Atty. Gen., of counsel), for defendants-appellees.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Plaintiff-appellant Mordecai Agur commenced this action by filing a complaint on his own behalf on December 1, 1971, seeking declaratory and injunctive relief with respect to certain sections of the N.Y. Judiciary Law which the appellant alleged to be unconstitutional. He also sought the convening of a three-judge court. The United States District Court for the Southern District of New York, Lawrence W. Pierce, *Judge*, dismissed the complaint on March 1, 1973, for failure to raise a substantial federal question. On appeal from this decision, this court granted appellant's request for the appointment of counsel. Affirmed.

The appellant married Margaret Neumann in 1960 and a son was born in 1962. In 1967, Mrs. Agur obtained a Mexican divorce decree which incorporated in its terms a 1966 separation agreement. That agreement provided that Mrs. Agur would have custody of their child until his sixth birthday and that she waived alimony for herself and support for her son.[1] Just prior to the

---

1. The former Mrs. Agur alleged in the state courts that, in exchange for the separation agreement, appellant also received from her $5000 in cash, $5000 in promissory notes and $5000 which was deposited in an account by her and later withdrawn by appellant. She argued that the receipt of these funds rendered Agur's later claim of poverty untenable. In addition, she contended that a further reason for her acceptance of the separation agreement was that Agur refused to give her a "gett," a Jewish religious divorce, unless she agreed to sign it.

sixth birthday of her son, Mrs. Agur commenced an action in the New York Supreme Court seeking custody of the child as well as $75 per week for his support. She alleged that Agur's emotional state required that she retain custody, asserting that he had threatened both mother and child and that three protective orders had been issued by the Family Court as a result.

Mr. Justice Beckinella, without a hearing, granted Agur a stay of the action and ordered the question to be arbitrated pursuant to the separation agreement, which provided for arbitration according to Jewish religious law in the event of a dispute. The Appellate Division, Second Department, by decision dated April 7, 1969, modified the order, directing that a hearing be held in the Supreme Court on the issues of custody, child support and counsel fees at which evidence of Jewish religious law could be presented. The court further granted Mrs. Agur the right to apply for child support pending the hearing. 32 App.Div.2d 16, 298 N.Y.S.2d 772 (2d Dep't. 1969).

On June 19, 1969, Mr. Justice Morrissey of the Supreme Court entered an order for temporary support which appellant failed to obey. On July 9, Mr. Justice Wegman ordered Agur to comply with this order. Appellant persisted in refusing to pay. By order to show cause returnable on September 8, his former wife, who had by then remarried, moved to hold Agur in contempt of the prior orders. On September 5, Agur, now represented by a new attorney, paid support arrears of $415. The affidavit of his attorney dated September 8 opposed the contempt order on the grounds that Agur had paid all the outstanding sums and that he "assures me that he will continue to do so in the future." The contempt motion was adjourned to September 15th, at which time Agur appeared in person, stating that his new counsel wished to resign. At his request the matter was adjourned to September 18th, the date set for. the hearing ordered by the Appellate Division, at which

time Agur appeared before Mr. Justice Damiani with his third attorney. Agur's new counsel requested a stay pending appeal of the Appellate Division decision to the Court of Appeals. When this request was denied, counsel, who had presumably been retained only for this purpose, withdrew and Agur then requested that the court adjourn to allow him time to obtain counsel. Upon the denial of this application, Agur refused to participate in the proceedings. Counsel for Agur's former wife proceeded to present evidence of Agur's financial situation and called him as a witness to testify. Agur persisted in refusing to participate and even declined to admit that he was the father of his child. Justice Damiani then denied the application to hold Agur in contempt for failure to make temporary support payments on the ground that Agur had paid the outstanding sums on September 5th.

On September 23, Agur issued a "Notice of Intent to Arbitrate" the dispute. On September 29, Justice Damiani issued an order granting custody of the child to Agur's former wife and giving appellant certain rights of visitation. In addition, appellant was ordered to pay $40 per week for support of the child and $500 for counsel fees. On October 9, appellant issued another "Notice of Intent to Arbitrate." Since appellant failed to make the required support payments, his former wife moved by order to show cause to hold appellant in contempt. Pursuant to her motion, Justice Damiani vacated Agur's notice of intent to arbitrate of September 23 and denied his request to modify the judgment of September 29. By affidavit of November 6, Agur opposed his former wife's motion for contempt and requested that, due to "new circumstances," the matter of support be sent to arbitration or the amount of support ordered be reduced to $15 per week. On November 10, Agur's notice of intent to arbitrate of October 9 was vacated pursuant to motion.

On November 10, Justice Mollen, without a hearing, rejected Agur's objection

to the court's jurisdiction and termed his claim of inability to pay the support ordered to be "without merit." He stated that application for reduction of support should in any event be made by independent motion. He then granted Agur's former wife's motion to hold him in contempt and fined him $450 ($200 for support and $250 for counsel fees). A judgment to this effect was issued on November 19. On June 15, 1970, the Court of Appeals dismissed the appeal from the decision of the Appellate Division which sent the matter of custody and support to a hearing. 27 N.Y.2d 643, 313 N.Y.S.2d 866, 261 N.E.2d 903. On the same day, the Appellate Division affirmed without opinion the order of Justice Mollen holding appellant Agur in contempt. 34 App.Div.2d 1107, 313 N.Y.S.2d 967 (2d Dep't). The Court of Appeals dismissed the appeal from this affirmance. 27 N.Y.2d 792, 315 N.Y.S.2d 854, 264 N.E.2d 347 (1970). On August 14, 1970, Justice Mollen ordered that Agur be committed to civil jail.[2]

The basis of appellant Agur's complaint here is that he was denied a hearing on the question of his liability to pay child support prior to the issuance of the contempt order, and was held in contempt despite the fact that he is impecunious. He contends that certain state statutes permit this result (N.Y. Judiciary Law §§ 753(a)(3), 770, 772 & 774(1)), and therefore violate the equal protection and due process clauses of the fourteenth amendment. He further asserts that the denial of his request for the appointment of counsel to represent him in the contempt proceedings violated the due process clause of the fourteenth amendment.[3] Appellant requested a declaratory judgment that the above cited statutes are unconstitutional and an injunction against their enforcement. He also asked that a three-judge court be convened. Appellant stated that he was proceeding pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, with jurisdiction based upon 28 U.S.C. §§ 1331 and 1343(3) & (4).[4]

2. Thereafter, appellant Agur moved to modify the order of commitment. The motion was denied on October 20, 1971, for failure of appellant Agur to appear in support thereof. Agur then moved to be relieved of the orders of contempt and commitment, and this motion was denied by Justice Beckinella on June 27, 1972. By notice of motion dated June 19, 1973, Agur sought modification of the order of September 29 with respect to visitation rights, and either an order for arbitration of the enlargement of visitation rights or an order enlarging such rights. On December 18, 1973, Agur sent to the Supreme Court of New York notification that he and his former wife had agreed that he would be able to visit the child "in a liberal way, starting this very Chanuka . . . ." He therefore requested a postponement of the motion *sine die* "until either party asks for such consideration under the present or then prevailing conditions."

While continuing to litigate the matter in the state courts, appellant commenced this action by a complaint dated November 9, 1971.

3. Appellant alleges that the order holding him in civil contempt even though he was unable to pay the amounts ordered violated the eighth amendment. He also contends that the failure of the court to appoint counsel to represent him on the contempt motion violated the due

process clause of the fifth amendment and the right to counsel guaranteed by the sixth amendment. Appellant argues that the refusal of the state courts to enforce the arbitration provision of the separation agreement violated the impairment of contracts clause of the Constitution. Finally, appellant contends that incarceration of an impecunious person for failure to pay child support would violate the thirteenth amendment and 18 U.S.C. § 1581 and 42 U.S.C. § 1994. Since we deem these contentions frivolous in the context of this case, we do not discuss them.

4. On appeal, appellant raises for the first time the possibility that this is in fact a habeas corpus action pursuant to 28 U.S.C. § 2254. Since his challenge here is to the length of his prospective confinement rather than the conditions thereof, it is suggested that his claim may be construed as basically one for relief by way of habeas corpus under Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Appellant offers this line of argument, no doubt, in order to circumvent part of the basis for the lower court's decision in this case—the doctrine of res judicata. Res judicata does not apply to habeas corpus actions. Preiser v. Rodriguez, *supra*, 411 U.S. at 497; Tang v. Appellate Division, 487 F.2d 138, 142 n. 7 (2d Cir. 1973) (opinion

The statutes attacked do not expressly require that a hearing be held in all cases. Judiciary Law § 772 provides that on "return of an order to show cause, the questions which arise must be determined, as upon any other motion . . ." Section 770 provides that where the husband "appear[s] and satisfy[s] the court or a judge before whom the application may be pending that he has no means or property or income to comply with the terms of the order at the time, the court or judge may in its or his discretion deny the application to punish the husband . . . ." Under these statutes, appellant argues, he was improperly held in contempt without a hearing as to his ability to pay. Since the court need not hold a hearing and has discretion to punish the husband even though he cannot pay, the statutes, he contends, are unconstitutional "as they are written and administered."

■ At the outset we must determine whether or not a three-judge court is required in this case. Appellant does seek injunctive relief against the enforcement by the defendants, some of whom at least are state officers, of a statute alleged to be in violation of the constitution. He has thus apparently met the requirements for the convening of a three-judge court set out in 28 U.S.C. § 2281. However, we agree with Judge Pierce that a three-judge court is not required here since no substantial question of federal law is involved. Although Agur claims that the statutes are invalid because they do not require a hearing, New York has construed and generally applied them in a contrary fashion.[5] Under New York law, state judges will be reversed if they fail to hold a hearing when affidavits reveal a genuine question of fact as to the ability

of a spouse to pay. E. g., Shkolnik v. Shkolnik, 41 App.Div.2d 523, 340 N.Y.S.2d 70 (1st Dep't 1973); Abbey v. Abbey, 7 App.Div.2d 910, 182 N.Y.S.2d 845 (2d Dep't 1959); Larotondo v. Larotondo, 285 App.Div. 899, 137 N.Y.S.2d 866 (2d Dep't 1955); Kruger v. Kruger, 279 App.Div. 808, 109 N.Y.S.2d 779 (2d Dep't 1952); Kirsh v. Kirsh, 279 App.Div. 589, 107 N.Y.S.2d 205 (2d Dep't 1951). Under the circumstances, we believe that appellant's claim that the statute is unconstitutional as written and generally applied is insubstantial and that a three-judge court is therefore not required. United Low Income, Inc. v. Fisher, 470 F.2d 1074 (1st Cir. 1972) (per curiam); New York State Democratic Party v. Lomenzo, 460 F.2d 250 (2d Cir. 1972).

■ Agur also claims, as we read his complaint, that the statute is unconstitutional as applied to him. An attack upon the particular exercise of powers granted by a statute does not require the convening of a three-judge court. Phillips v. United States, 312 U.S. 246, 61 S. Ct. 480, 85 L.Ed. 800 (1941); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Galvan v. Levine, 490 F.2d 1255, 1258–1259 (2d Cir. 1973); C. Wright, Federal Courts § 50, at 190 (2d ed. 1970). We therefore turn to the question whether the state court's failure to accord Agur a hearing in his case constituted a violation of his constitutional rights.

■ As we have noted, New York law requires that a court hold a hearing on the issue of inability to pay prior to an adjudication of civil contempt if that issue is genuinely in doubt. Our review of the affidavits submitted prior to the entry of the contempt order indicates

---

of Mulligan, J.). This analysis presents the difficult question of whether appellant is "in custody" for the purposes of § 2254. Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). See also Blouin v. Dembitz, 489 F.2d 488, 491 n. 6 & accompanying text (2d Cir. 1973). However, in view of our disposition of this case, it is unnecessary for us to determine whether this

action is properly an application for a writ of habeas corpus or a civil rights action under § 1983. Appellant cannot succeed in either event.

5. Indeed, appellant urged precisely this position in his reply brief in the Appellate Division on appeal from his contempt citation. See note 8 infra.

that such an issue existed. Appellant contended that he had obligations on a loan from Chemical Bank and to people abroad for whom he had been safeguarding some money, and that he was bound by an order of the Supreme Court to contribute $30 per week to the support of his aged father. Agur stated that these obligations left him with barely enough on which to live. His former wife disputed these assertions. Although a question was thus raised, we nonetheless do not believe that Justice Mollen was required to hold a hearing. Agur had been given an opportunity to produce evidence on these very issues at the hearing on September 18th, but he nonetheless refused to take any part in the hearing. In our view, he waived the right to a hearing and may not now contend that the order of contempt was in violation either of New York law or his constitutional rights.

Agur claims that his refusal to participate in the hearing was based upon the denial of his right to counsel. Although the minutes of the hearing before Justice Damiani are not available, we have reviewed the voluminous file which this litigation has produced. From subsequent motions made by Agur to modify the September 29th judgment, it appears that his non-participation was in fact based upon his continuing refusal to accept the court's jurisdiction. Although Agur claimed that his prior counsel had given only one day's notice of resignation, on September 15th, three days before the hearing, he advised the court that his counsel planned to resign.

Agur actually appeared with an attorney on September 18th, but counsel had apparently been retained only to argue for an adjournment. Failing to obtain that relief, appellant offers no plausible explanation for his failure to argue the merits. Agur contended in the state courts that he had money to pay for counsel but was denied the right to select an attorney. There is no support at all for this position in the record.

Agur argues that his religious principles prohibit the submission of disputes between Jews to secular courts and that this was another reason why he stood mute at the hearing of September 18. This is, of course, inconsistent with his first claim that he did not participate because he had no counsel. Appellant cannot rely, on the one hand, on his inability to participate in legal proceedings because of religious restrictions, and, on the other hand, on the failure of the court to protect appellant's right to take part in secular legal proceedings with the aid of counsel. Furthermore, a reading of various affidavits submitted by Agur in the state litigation is persuasive that his claim that religious scruple precluded his participation in the September 18th hearing is self-serving and insupportable. For example, he said in one affidavit that religious law prevents him from "appear-[ing] in court," yet he has repeatedly initiated court procedures. When the custody decision was made on September 18th, he stated: "I'm going to have a habeas corpus anyway." [6] In another affidavit, he stated that a Jew should not testify against a co-religionist in a secu-

---

6. A number of other statements made by appellant in his court papers are inconsistent with the position he has presented in this action. In one affidavit, appellant described the hearing as having been held *"without my participation* due to the fact that jurisdiction was undecided, and that I was deprived of due process, including the right to counsel." (Emphasis in original). He went on:

I have detailed the above because, I wanted to show this Court that at no time was there a full hearing as to my financial status, which would have shown clearly my status. I am willing to submit to one now, *since*

*I have attorneys who will represent me free of charge.*
(Emphasis added).
Speaking of himself in the third person in a later affidavit, he said:

When the original order of Mr. Justice Damiani was entered to pay $40 per week, he was unable to participate because he had no attorney and because he sought additional time to obtain a stay from an appellate court so that the underlying issue in this case, viz. whether the arbitration agreement entered into between the parties was enforceable, could be definitively determined.

lar court "if there is any possibility to have the matter litigated before a Jewish Court." In view of the opinion in the Appellate Division, it would seem clear that no reasonable possibility of such a hearing remained.[7]

On June 27, 1972, in denying a number of motions to cancel the contempt order and to order arbitration of the amount of support owed, Justice Beckinella stated as follows:

> In reaching the above determinations the court has reviewed the entire file in this matter which can only be described as a quagmire of legal papers.
>
> The file in this matter is testimony of the intransigence of the respondent, Mordecai Agur. He simply refuses to accept the judgment of the Appellate Division that the custody of the child of the parties, the amount of that child's support, and the amount of counsel fees are to be determined by Special Term rather than by an arbitration tribunal. . . . Respondent's intransigence has turned a relatively simple matter into a nightmare of motions, motions to reargue, and appeals. At one time or another at least seven Justices of this court have made decisions in this matter. Although his contentions have all been considered by this court and the Appellate Division, he refuses to acquiesce in this court's jurisdiction. His affidavit in support of the third motion referred to above contains these words: "2. At the outset I must repeat that I neither have nor do consider this court having jurisdiction in this matter, since there exists a written arbitration agreement. See Agur v. Agur, 32 A.D.2d 16, 298 N.Y.S.2d 772."

It would appear that this court will obtain no surcease from Mordecai Agur's persistent maneuvers to get his own way until the child of the parties becomes self-supporting.

The very persistent and pertinacious litigation by Agur in the New York courts is some indication that the plea of religious scruple is not genuine.[8]

We are convinced that Agur was given the *opportunity* for a hearing on the merits, that his asserted grounds for non-participation were spurious and that he therefore is deemed to have waived the hearing and has no due process or equal protection claim. Boddie v. Connecticut, 401 U.S. 371, 378–379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Cf. Geary v. Geary, 272 N.Y. 390, 401, 6 N.E.2d 67 (1936); People v. Henriques & Co., 267 N.Y. 398, 403, 196 N.E. 304 (1935). We see no reason in the record to justify a second hearing on Justice Mollen's contempt order of November 19. The only new circumstance urged by Agur to have arisen after the September 18th hearing was the receipt of an order of Justice Morrissey confirming an arbitration award requiring him to pay his father $30 per week for support. However, the order confirming an award of August 12, 1969, was signed on September 5th, well before the September 18th hearing. The order recited that Agur had not opposed the application although duly served. The only new circumstance, therefore, was the service of the order upon Agur sometime after the hearing on September 18th. In view of the claim that Agur had himself initiated the paternal support procedure (at least one Supreme Court Justice has questioned its legitimacy), and the fact that the terms of the order were in any event known to him, the assertion that it represented a new circumstance justifying a hearing is totally unconvincing.

Certain facts do emerge from this record. A relatively simple procedure de-

---

7. The Appellate Division in its decision ordering a hearing before the court specifically held that appellant had the right to offer evidence as to the requirements of Jewish law as they related to the question of the child's custody. No such evidence was ever presented.

8. It should be noted that all the arguments upon which appellant relies in this court were presented to and rejected by the Appellate Division upon appeal from the civil contempt citation.

signed to protect the interests of a child has become a legal morass. Agur admits in his complaint here that "one hundred or so motions" have been presented in the state proceedings. Most of them have been initiated by Agur. His son is now 12 years old, and, for five years, Agur has apparently paid nothing toward his support despite the court order. Although an order of commitment was signed almost four years ago, it appears that Agur has never spent a day in confinement. His present claims of lack of due process are without any foundation at all. We are not disposed to provide another forum which would allow the morass to become a Serbonian bog.[9]

Affirmed.

---

9. We do note that, with the passage of time since the commencement of this action, meaningful changes of circumstances may have occurred which might well provide the appellant with legitimate reason to apply to the state court to amend the terms of the support order. See N.Y. Judiciary Law § 775. On the other hand, appellant's financial situation may have improved from what he contended it was at the time of the initiation of this action. For example, since the citation of appellant for contempt in 1969, his father, whom he was obligated to support, has died.

The bulky file of the proceedings in the state courts was presented to this court only in small part. However, we have examined the complete file and have taken judicial notice of it.