Joseph STONE, Intervening
Plaintiff-Appellee,

v.

Paul PHILBROOK, Individually and as
Commissioner of the Vermont Depart-
ment of Social Welfare, Defendant-
Appellant.

No. 51, Docket 75–7066.

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1975.

Decided Dec. 3, 1975.

during a preceding thirty-day period. The appeal raises intriguing questions concerning the scope of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and the application of that perennial nightmare, the three-judge court requirement, 28 U.S.C. § 2281; it also raises questions of state law, only glancingly noted by the parties, concerning the validity of certain regulations of the Vermont Department of Social Welfare.

I.

The case concerns Vermont's General Assistance Program, which constitutes Chapter 38 of the State's Welfare Law, Title 33 of the Vermont General Statutes. Chapter 26, § 2505(c)(2) confers general authority on the Commissioner of the Department of Social Welfare pursuant to which he issued Regulations; § 2142.4 of those Regulations states:

Dean B. Pineles, Asst. Atty. Gen., State of Vermont, Montpelier, Vt., for defendant-appellant.

Stephen W. Kimbell, Burlington, Vt., for plaintiff-appellee.

Before FRIENDLY, MANSFIELD and TIMBERS, Circuit Judges.

*General Assistance.*

General Assistance, a program to meet emergency needs, has no provision for ongoing assistance. Subsequent requests will be treated as new applications.

FRIENDLY, Circuit Judge:

This is an appeal by the Commissioner of the Vermont Department of Social Welfare from an order of the District Court for Vermont granting intervening plaintiff's motion for class action designation and also for summary judgment to the extent of declaring that Vermont was bound to give a trial-type hearing and to continue payments pending the outcome of the hearing before denying a reapplication of those who had received General Assistance payments three times

Consistently with this, and based on the authority granted by § 3004(b), (c) and (d), Regulation §§ 2600–09 require *inter alia,* that an applicant should "have an emergency need" and "have complied with the employment requirements if applicable"; § 2607.1 requires that, except for persons exempted by § 2607.2 or meeting two or more qualifications set out in § 2607.1, applicants must "submit evidence of at least 20 hours of active effort to seek full and/or part time employment during the seven days immediately preceding the date of application."[1] This had the effect of requiring all non-exempt persons to apply weekly.[2]

1. A half-hour was deductible from twenty hours for each hour of employment during the seven days.

2. Those exempted from the work-search requirement (except by virtue of first application status) could be granted assistance up to 14

The complaint in this action under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3), was filed by Robert St. Amour. Joseph Stone was permitted to intervene as a plaintiff. Later the case was dismissed with respect to St. Amour and Stone continued as plaintiff.

Stone's complaint, filed November 7, 1973, alleged that he had been unemployed since December, 1972; that he had received weekly payments for food, personal needs and room rent as General Assistance from the Vermont Department of Social Welfare for nine consecutive months, except for a five-week period of hospitalization in April and May, 1973; that such payments were his sole means of support; and that these payments were interrupted on November 5, 1973, when the District Director in the Middlebury office determined that during the preceding week Stone had not complied with the employment effort requirements of the Regulations, Welfare Assistance Manual, § 2607, supra. The essential items in the prayer for relief were that the court

> Enter a declaratory judgment declaring .that the defendant's practice of terminating General Assistance grants without affording the recipients thereof adequate notice and a hearing at which they may contest the factual and judgmental bases of the action denied plaintiff-intervenor due process of law under the Fourteenth

Amendment. to the United States Constitution.

and

> Issue a temporary restraining order, preliminary and permanent injunction restraining defendants from terminating, interrupting, or suspending the General Assistance maintenance grants of plaintiff-intervenor unless he is first given proper notice and an opportunity for a hearing at which he may contest the factual and judgmental basis of the termination or suspension action.

Later Stone moved to bring the suit as a class action on behalf of those who receive General Assistance three or more times per month and those "who rely regularly on General Assistance benefits to meet any of their regularly recurring basic needs as covered by the General Assistance program," and he asked for summary judgment. The defendant was already under a temporary restraining order with respect to Stone.

The Commissioner submitted a number of affidavits in opposition. His own affidavit stated that the legislature intended General Assistance as a program "to meet only the emergency needs of those individuals who have no other sources of income and resources;" that "where at all possible, assistance is granted to cover a period of only one week"; that "applicants must reapply for each week they wish to receive assistance"; and that on each renewal applicants must show con-

---

days. See Regulations, Vermont Department of Social Welfare, § 2611. Section 2607.2 provides for exemptions from the employment requirements of § 2607.1 if the applicant

1. Is under age 16; is age 65 or over; is age 16 or 17 and a full-time student; or is age 18 or over and living with a parent and attending high school full time; or

2. Is gainfully employed (see Definition section 2601); or

3. Has responsibility for care of child(ren) under age 18 or of an incapacitated adult(s). · When more than one individual included in the application claims such responsibility, the determination as to whom shall be exempt will be made by the Department representative; or

4. Is or was during the applicable time period physically or mentally incapable of engag-

ing in or actively seeking gainful employment· as evidenced by documentary medical evidence (DSW–210G) received within 14 days of the claim of such incapacity, if such incapacity is not obvious; or

5. Has a verified written statement from a potential employer indicating that he will start working within 7 days from date of GA application. All individuals so exempted shall be advised to continue to attempt to seek temporary employment during the time they are waiting to start permanent work.

Any individual claiming an exemption has the burden of proving such. The Department shall pay the reasonable expense of required medical examinations.

formance with eligibility requirements, including having spent 20 hours looking for work. The affidavit of Stone's case worker in the Middlebury office explained that Stone had been fully apprised of the need for meeting the 20-hour requirement each week; that when Stone reapplied on November 5, it appeared that he had looked for work only for four hours and sought to excuse this on the grounds of bad weather and lack of transportation; that the caseworker had advised Stone of his right to request a fair hearing under § 1250 et seq., of the Regulations;[3] that Stone had made such a request; and that he was granted assistance when he applied the next week. An affidavit of William E. Griffin, the Vermont Human Services Board Hearing Officer, stated that in 1974 the average time between receipt of a fair hearing request under the General Assistance Program and decision by the Human Services Board was 38 days, with the minimum time recorded 6 days and the maximum 66.

The district court rendered an opinion dealing with the issues here outlined, and also with certain others no longer pressed by the State. It granted plaintiff's motion for class action determination to the extent of authorizing him to represent the class of persons receiving General Assistance three or more times per month. It found there was no significant dispute as to any material fact. Proceeding to discuss the law, it held that although, under *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), mere subjective expectancy of continued receipt of General Assistance benefits was "insufficient for due process safeguards to attach," *Sindermann* required a different result when the applicant's expectation had been reinforced by continued success, here the grant of weekly General Assistance three times within thirty days. Any member of that class was therefore entitled to the type of hearing mandated by *Goldberg v. Kelly, supra,* before general assistance payments could be terminated. The court entered an order as follows:

That defendant's motion to dismiss is denied and that the plaintiff's motion for class action certification is granted with respect to those receiving General Assistance three or more times per month. The plaintiff's motion for summary judgment is granted as the Court finds and declares the State's policy of denying evidentiary hearings to regular recipients of Gen-

---

**3.** At the time of the hearing in the district court, § 1253 of the Regulations provided:

1253. *Continued Assistance*

A request for a hearing (oral or written) made within ten (10) days from the mailing date of a notice of decision to decrease or terminate assistance or benefits will preclude the department from effecting the proposed adverse action. Aid or benefits will be continued at the same amount until a fair hearing has been held and a decision rendered by the Human Services Board. Decreases or terminations based upon other subsequent facts not at issue can be taken following proper notice.

This has since been liberalized to read:

1253. *Continued Assistance*

Upon receipt of a request for fair hearing in response to notice of proposed termination or reduction of aid or benefits, the district director shall determine whether the issue raised is a question of fact or judgment or is a question of law or department policy.

Assistance or benefits shall continue until a fair hearing decision is rendered, if:

1. The request for fair hearing is received in the district office, or postmarked within the specified advance notice period; and

2. The question at issue has been ruled an issue of fact or judgment.

Assistance or benefits shall be discontinued or reduced immediately, although fair hearing response continues, when the request has been ruled an issue of law or department policy.

The district director shall inform the recipient in writing of action taken with regards to continuation of benefits, including the reason therefor, and response to the fair hearing request.

The Department apparently considers this section to be inapplicable in a case like Stone's since the denial of his November 6 application was not a proposed termination or reduction of aid or benefits but a refusal to grant benefits for an additional week.

eral Assistance, as defined in this opinion, to be unconstitutional.

At this point the defendant became conscious of the three-judge court statute, 28 U.S.C. § 2281, and moved the district judge to vacate his order for lack of jurisdiction. The judge denied the motion without explanation. This appeal followed. Meanwhile, in the absence of a stay, Vermont has been giving *Goldberg*-type hearings to persons within the class whose applications for continued assistance have been denied, with payments continuing pending the outcome of the hearing.

## II.

■ It is plain enough that if either party had requested the convening of a three-judge court, the request should have been granted. The complaint on its face sought an injunction against the enforcement of a regulation of statewide applicability on the ground of its unconstitutionality and not merely as an unwarranted deviation by an administrator from a constitutional statute and regulation, see *Ex parte Bransford,* 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); *Galvan v. Levine,* 490 F.2d 1255, 1258–59 (2 Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), and the challenge was not insubstantial under the test laid down in *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), see also *Agur v. Wilson,* 498 F.2d 961, 965 (2 Cir. 1974). The State's appeal from the refusal of the district judge to vacate his judgment after the State had belatedly sought the convening of a three-judge court takes us back to familiar, indeed much too familiar, ground.

■ We start with the point that what the district court entered was a declaratory judgment, not an injunction. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), held that in the circumstances there presented the three-judge court requirement did not apply to actions for declaratory relief. In that case, how-

ever, the Court was able to satisfy itself, as we were in *Seergy v. Kings County Republican Committee,* 459 F.2d 308, 312–13 (2 Cir. 1972), that, despite a prayer for an injunction in an amended complaint, pre-trial proceedings had made it plain that "no request for injunctive relief nor even any contemplation of it attended the case as it went to trial . . . ." 372 U.S. at 153, 83 S.Ct. at 559. Here plaintiffs' motion for summary judgment did not specify what relief was sought.

The Supreme Court has elaborated on the declaratory judgment-injunction theme in four subsequent cases, *Rockefeller v. Catholic Medical Center,* 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970); *Mitchell v. Donovan,* 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Gunn v. University Committee to End War in Vietnam,* 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970); and *Steffel v. Thompson,* 415 U.S. 452, 456–57, 94 S.Ct. 1209, 39 L.Ed.2d 505 and notes 6 and 7 (1974). All of these required interpretation of 28 U.S.C. § 1253, which provides:

> Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

In the first three cases three-judge courts had been convened because of complaints seeking injunctions on the ground of unconstitutionality but the three-judge courts had granted only declaratory relief. In *Gunn,* for example, the lower court had rendered an opinion stating that "Plaintiffs herein are entitled to their declaratory judgment" of unconstitutionality of a Texas statute and "to injunctive relief" but had stayed its "mandate" pending the next session of the Texas legislature; the session had been held but the court had entered no further order. The Supreme Court held,

as it had done in *Rockefeller* and *Mitchell,* that it lacked jurisdiction under § 1253 and that appeal lay, if anywhere, to the court of appeals.[4]

In *Thoms v. Heffernan,* 473 F.2d 478 (2 Cir. 1973), *rev'd on other grounds,* 418 U.S. 908, 94 S.Ct. 3199, 41 L.Ed.2d 1154 (1974), we had occasion to apply the teaching of three of these cases. There also a three-judge court had been convened because of a demand for an injunction but the court had entered only a declaratory judgment of unconstitutionality, stating it would "forbear to enter an injunction" since it had "no reason to believe defendants will continue to enforce" the statute upon notice of the decision. Following the analysis of *Gunn,* we upheld our own appellate jurisdiction since "in the present state of the case no one knows if an injunction will ever be required, let alone against whom such an injunction might run." *Thoms* would clearly sustain our jurisdiction over this appeal if a three-judge court had entered the order made here by the district judge. The argument to the contrary in this case is not that the appeal is excluded from our appellate jurisdiction by the exception for cases "where a direct review may be had in the Supreme Court," 28 U.S.C. § 1291, see also § 1292(a)(1), since such review plainly could not be had. It is rather that the district court lacked jurisdiction to do what it did; that "an appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in the cause under review," *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); and that if a single judge acts when three are required, *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 716, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Schackman v. Arnbergh,* 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967), and later cases, see Hart & Wech-

sler, The Federal Courts and the Federal System 274 (2d ed. 1973), and D. Currie, Federal Courts: Cases and Materials 805–06 (2d ed. 1975), point to the conclusion that, as we said in *Gold v. Lomenzo,* 425 F.2d 959, 961 (2 Cir. 1970), while "a court of appeals does not exactly have *jurisdiction of an appeal*" from the single judge's order, "it has something sufficiently similar to enable it to reverse for the convening of a three-judge court." (Emphasis in original.) However such an argument may have stood before *Steffel v. Thompson, supra,* 415 U.S. at 456–57, 94 S.Ct. 1209, we do not see how it can survive the decision in that case.

In *Steffel,* as here, the application for a declaratory judgment and an injunction was heard by a single judge, who denied all relief. Petitioner appealed to the court of appeals; although his notice of appeal challenged the denial of both sorts of relief, in his appellate brief he abandoned the appeal from denial of injunctive relief. *Becker v. Thompson,* 459 F.2d 919, 921 (5 Cir. 1972). The court of appeals took jurisdiction and affirmed the judgment denying declaratory relief. The Supreme Court held that although a three-judge court should have been convened, the abandonment of the appeal from the denial of injunctive relief made it appropriate for the court of appeals to take jurisdiction. If a court of appeals has jurisdiction in a case where a single judge has taken action that could properly be taken only by three judges, provided that the appellant limits himself to action which the single judge could properly have taken, it would seem to follow *a fortiori* that the court of appeals has jurisdiction when a single judge has only taken action he could properly take, even though he was asked to take action he could not properly take and made no disposition of the request to do more.[5] Here the failure to

4. The Court pointed out that even if the issuance of what it characterized as merely "a rather discursive *per curiam* opinion," ending with the paragraph summarized in the text, could be considered a denial of an injunction,

the *defendants* could not appeal from an order in their favor. 399 U.S. at 387, 390 n. 5, 90 S.Ct. 2013.

5. Thus the instant case is distinguished from *Maggett v. Norton,* 519 F.2d 599 (2 Cir. 1975),

act on the request for an injunction simply is not before this court. The plaintiff has not appealed from the failure to act on that request and even if the failure were to be taken as the denial of an injunction, the defendant could not appeal from it. As Mr. Justice Stewart said in *Gunn, supra,* 399 U.S. at 390 n. 5, 90 S.Ct. at 2017:

> Even if the opinion and subsequent inaction of the District Court could be considered a denial of an injunction because the injunctive relief demanded was not forthcoming, the appellants could not appeal from an order in their favor.

Just where all this, and the still more recent decision in *MTM Inc. v. Baxley,* 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975), leave traditional notions that under the three-judge statute the power of an appellate court to consider a case on the merits depends on what kind of court should have been convened below is a new puzzlement in this never-never land, as Mr. Justice White pointed out in his concurrence in the case last cited, 420 U.S. at 805, 95 S.Ct. 1278.[6] However, the conclusion for this case seems clear enough.

We recognize that our holding might be regarded as paving the way for significant subversion of the basic policy of the three-judge statute by allowing a plaintiff to press before a single judge only his claim for declaratory relief, especially if—a point we do not decide—a plaintiff who has obtained a declaratory judgment of unconstitutionality would not have to go before a court of three judges to obtain a subsequent injunction since his request would be grounded not on the unconstitutionality of the statute but on the judgment declaring it so. See D. Currie, *supra,* 32 U.Chi.L.Rev. at 17–19 & n. 102; Hart & Wechsler, *supra,* 968. However, this policy argument is

as applicable when the plaintiff asks solely for declaratory relief, with respect to which *Kennedy v. Mendoza-Martinez, supra,* 372 U.S. at 152–55, 83 S.Ct. 554, clearly sustains the power of the single judge with consequent review in the court of appeals, as when the plaintiff couples this with a prayer for an injunction on which the judge has not acted. Also we are not here dealing with a case where state defendants made a timely request for a three-judge court because of the presence of a request for injunctive relief and this was denied or with a case where injunctive relief had been granted after failure to ask for a three-judge court, cf. *Crow v. California Dept. of Human Resources,* 325 F.Supp. 1314 (1970), rev'd, 490 F.2d 580 (9 Cir. 1973), *vacated and remanded for consideration of mootness; if not moot, for consideration of three-judge requirement,* 420 U.S. 917, 95 S.Ct. 1110, 43 L.Ed.2d 388 (1975). We happily leave those problems to another day.

### III.

◼ If § 2142.4 of the Commission's Regulations and other regulations we have cited are consistent with the Vermont statute, as the district court assumed, its decision was in error. As the District Court recognized, *Goldberg* does not command the present result; that case did not hold that benefits must be extended pending a hearing when an initial application is rejected. See *Wheeler v. Montgomery,* 397 U.S. 280, 284–85, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (dissenting opinion of the Chief Justice). But the court believed that circumstances "extrinsic" to the statute and regulations supported a claim of entitlement, as they had in *Sindermann, supra.*

In *Sindermann,* the Court, in the absence of any tenure rules, was forced to look to the Odessa Junior College Official Faculty Guide, and the existing

---

in which the single judge issued a preliminary injunction and subsequently "ordered" the State to substitute new procedures.

**6.** For the latest contribution to the scholastic philosophy of appellate jurisdiction over three-

judge courts, see *Buchanan v. Evans,* —— U.S. ——, ——, 96 S.Ct. 381, 46 L.Ed.2d 293 (1975) (dissenting opinion of Mr. Justice Rehnquist).

understandings which, in such a vacuum, might have created a de facto tenure system. This was required since "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings. that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. . . . [Their] 'property' interest in welfare payments was created and defined by statutory terms." *Roth, supra,* 408 U.S. at 577–78, 92 S.Ct. at 2709.

Since there are explicit state regulations in the present case, it would seem that, if these regulations comport with the state statute, any claim of further entitlement could hardly be sustained. The mere facts that a person had satisfied Vermont's welfare authorities of his entitlement to general assistance thrice within 30 days and that the denial rate for renewal applications by such persons was slight, no more shows a "common law" of continued entitlement, see *Sindermann,* 408 U.S. at 602, 92 S.Ct. 2694, than the suggestion in *Roth* that most teachers hired on a year-to-year basis in Wisconsin State University—Oshkosh were rehired, 408 U.S. at 578 n. 16, 92 S.Ct. 2701. Moreover, even if it were to be considered that a General Assistance recipient like Stone had some attenuated property interest, the process that is "due" for failure to grant an application for a week's assistance on a ground that could be, and was, cured within the week, would be extremely small. Certainly there would be no requirement for a procedure which would continue his maintenance on the welfare rolls for an average of 38 days.[7] It is not clear why the caseworker's interview with Stone, particularly when coupled with an opportunity for a later "fair hearing," did not satisfy the "rudimentary precautions" required by *Goss v. Lopez,* 419 U.S. 565, 581–82, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), for short-term action in another context. See Verkuil, The Ombudsman and the Limits of the Adversary System, 75 Colum.L.Rev. 845, 857 (1975).

We need not decide whether a different result would follow in a case where the denial of an application by a person who had long been receiving general assistance was on a ground not susceptible of a speedy remedy by action on his part. It is enough that if the regulation is consistent with the Vermont law, summary judgment should not have been rendered in favor of Stone or of the class.[8] Assuming that the regulations were authorized by the General Assistance law, we would agree with appellant that the court, without constitutional justification, had converted a program to meet emergency needs, on a weekly application basis, into one for continuous assistance terminable only by *Goldberg*-type procedures.

Counsel for appellee retorted that it was the Department of Public Welfare, not the court, that had transmuted the statute—a point which apparently was not argued in the district court. For reasons now to be stated we believe this has sufficient merit that we shall simply reverse the grant of summary judgment, without directing dismissal of the complaint, cf. *Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–66 (2 Cir.

---

7. Indeed the district court's disposition leads to the bewildering result that, so long as the shortest delay between the request for and the convocation, review and decision of a trial-type hearing is six days, in fact an impossibly short period, no applicant who has thrice received General Assistance within thirty days can be effectively turned down. If an applicant files on Friday for benefits to commence on Monday and is rejected, he need only ask for a hearing; this will continue his assistance at least until the issue is mooted, on the following Friday, at which time he may re-apply and begin the whole procedure anew.

8. Indeed we would not think the case was appropriate for class action designation.

1971), *aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 603–04, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), and cases there cited, so that this state law question may be further considered.

## IV.

■ The Vermont General Assistance plan was a part of Public Act No. 147 which, among other things, added Chapter 38 to the Vermont Statutes. Nothing in the text of the Act indicates that it was intended to deal solely with emergencies in the sense of situations occurring unexpectedly as distinguished from the continued emergency arising from lack of an adequate means of livelihood. The basic provision was § 3003, which reads as follows:

> § 3003.  General assistance at the expense of the state.
>
> The department shall furnish general assistance under this chapter to an eligible person at the expense of the state with due regard to the income resources and maintenance available to him.  As far as funds are available, it shall provide a reasonable subsistence compatible with decency and health.

"General assistance" was defined in § 3001(3):

> (3) General assistance:  financial aid and services, to provide a subsistence including support, maintenance, necessities of life, funeral expenses, clothing, and medical, institutional and hospital care provided by the department under this chapter and chapter 40.

Section 3004 provided:

> § 3004.  Eligibility.

Unless disqualified under other provisions of the welfare code, a person is eligible for general assistance if he is in need and unable to provide a subsistence for himself or is unable to secure a subsistence from a person legally responsible for his support.

Section 3006, which is reproduced in the margin,[9] drew a sharp distinction between emergency and other general assistance.  The "emergency assistance" there mentioned appears to have been that which § 3002(b) and § 3005(b) authorized town service officers to grant pending action on an application for general assistance and the general assistance on an emergency basis which § 3008(b) authorized to be furnished a person otherwise disqualified because of a finding that the applicant had come into the state for the purpose of receiving general assistance.

Study of the hearings of the House and Senate Committees, which we have obtained from Vermont, likewise affords no indication that Chapter 38 was intended to have such a limited application as defendant contends.  Public Act No. 147 was a comprehensive revision of Vermont's welfare laws, transferring responsibility from local subdivisions to the State.  A proponent of the measure stated before the House Health and Welfare Committee that

> The measure proposes this new modern approach to our welfare system by providing uniform standards of eligibility for all welfare benefits, by providing uniform standards of need, by providing services in support of prevention and rehabilitation in all of those instances where aid in the form of financial assistance is required.

---

**9.**  § 3006.  Action on application or information.

Except in cases of emergency assistance, the commissioner shall cause an investigation and record to be made of the circumstances of the person alleged to need general assistance to determine whether the person is eligible.  Information shall be sought as to the residence of the person, his age, physical condition, earnings or other income, ability

to be gainfully employed of all members of his family, the cause of the person's condition, the ability and willingness of persons legally liable for his support to assist, and other relevant facts.

Public Act No. 176 of 1971 made certain changes in §§ 3002(b) and 3005(b), struck the initial words "Except in cases of emergency assistance" in § 3006, and made other changes not here material.

The chairman of the House Committee explained the division of authority between the town service officer and the State in testimony before the Senate Committee as follows:

Now the difference comes when we are talking about a case that is just not an emergency—a one time case. Here is a case that will most likely be a continuing or on-going case. In that case, the town service officer will refer this case to the Social Welfare Department or the nearest Social Welfare regional office or one of the social welfare workers.

While Chapter 38 thus seems to have been just what it said it was, a "general assistance" program designed to meet the needs of persons who did not come within the various "categorical programs" which the federal government funded in part, apparently the Vermont legislature did not provide the necessary funds. The Department endeavored to handle a difficult situation by promulgating the definitions in §§ 2141.1 and 2142.4, and the strict eligibility criteria, §§ 2600–2609, of which the "need" and "employment" requirements are outlined in Part I of this opinion. Evidently having some concern about the validity of these regulations, the Department presented H. 432 to the 1974 legislature. That bill would have narrowed the definition of "general assistance" in § 3001, eliminating the provision for a "subsistence;" it would have struck the provision for a "reasonable subsistence" from § 3003 and added to that section passages providing that eligibility standards need not be the same as those applicable to the categorical assistance programs and that they might include "a reasonable standard pertaining to work-related efforts; and it would have struck § 3004 altogether. Thus there would have remained no statement of the general purposes on which eligibility is to be predicated; instead there would be specific provisions authorizing regulations, within which general purposes might be stated. The testimony of Commissioner Philbrook and of Yasili Bellini, Director of the Division of Income Maintenance, before the House Committee made plain that the purpose of H. 432 was to clarify that General Assistance was an emergency program, to "legitimize what [the Department was] doing by regulation."

The Senate countered with a proposal to meet the problem of insufficient funds by amending § 3004 to read as follows:

§ 3004. Eligibility

Unless disqualified under other provisions of the welfare code, a person is eligible for general assistance is he is in need and unable to provide a subsistence for himself or is unable to secure a subsistence from a person legally responsible for his support. In determining need and eligibility, as defined in section 3001, the commissioner shall distribute general assistance, as far as funds are available, *in the following priority order:*

(1) Applicants under the age of majority;

(2) Aged, blind or disabled persons with emergency needs;

(3) Applicants who are supporting one or more dependents; and

(4) Able bodied applicants with no dependents.

The House refused to concur and a conference committee was appointed. The result was Act 207. This substantially retained the original form of § 3003, including the provision for a "reasonable subsistence." The various amendments authorizing the Department to make eligibility standards different from those of the categorical assistance programs and to promulgate reasonable standards pertaining to work-related efforts were rejected as part of § 3003, but were instead included as additions to § 3004. The retention of § 3003 and the rest of § 3004 suggest that the Vermont legislature did not desire the various "emergency" provisions, derived from the Department's regulations, to be the sole characterization of Chapter 38, as H. 432 had urged.

We would not wish to be understood as holding that the language and history of the General Assistance statute compel a conclusion that the Commissioner exceeded his authority in requiring weekly applications even from persons who returned week after week and thereby evinced long-term need or in requiring a weekly showing save from certain exempted applicants that 20 hours—half of the normal work week—had been devoted to seeking work in the preceding week. Although § 3004(d) was initially proposed as ratifying the work-search element of a program premised on emergency needs, when that section was to *replace* the present § 3003, there is a substantial question whether a weekly reapplication and work search are "reasonable" requirements within § 3004(d) to a support or subsistence premised program. We think therefore that the language and the legislative history create substantial doubt whether the characterization of General Assistance in § 2141.4 and § 4142.4 and its effectuation in §§ 2600–2609 are within the rulemaking power which the Vermont legislature confided to the ·Commissioner.

Although pendent jurisdiction would doubtless permit the district judge to decide the question, the proper course is for him to retain jurisdiction "pending a determination of proceedings, to be brought with reasonable promptness" in the Vermont courts to determine the issue. *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 646, 85 L.Ed. 971 (1941); *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 452 (1959); *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Askew .v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Boehning v. Indiana State Employees Ass'n Inc.,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975). The Vermont courts, with their day-to-day familiarity with the workings of the State's welfare system, are in a better position than a federal judge to decide the delicate question of state law which we have noted. Their decision may render determination of the constitutional question unnecessary. In any event it will supply a firm basis on which that issue can be decided.

The order granting class action status and summary judgment is vacated and the cause remanded for further proceedings consistent with this opinion. No costs.